J-S17010-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SEVILLE J. ALI, | |
| Appellant | No. 3056 EDA 2016 |

Appeal from the Judgment of Sentence Entered April 7, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0005228-2014

BEFORE:  BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 29, 2018**

Appellant, Seville J. Ali, appeals from the judgment of sentence of an aggregate term of 10 to 20 years' incarceration, imposed after he was convicted, following a non-jury trial, of aggravated assault, 18 Pa.C.S. § 2702(a)(1), and possessing instruments of crime (PIC), 18 Pa.C.S. § 907(b). Appellant seeks to raise several issues on appeal, including challenges to the sufficiency and weight of the evidence to sustain his convictions.  Additionally, Appellant's counsel, John Belli, Esq., seeks to withdraw his representation of Appellant pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009).  After careful review, we affirm Appellant's judgment of sentence and grant counsel's petition to withdraw.

The trial court summarized the facts of Appellant's case, as follows:

This is a case involving an incident that occurred on February 22, 2014 at 438 West Queen Lane where Appellant shot Complainant, Keith Chapelle[,] in the arm just outside Mr. Chapelle's front door.

Prior to February 22, 2014, Mr. Chapelle and Appellant had a cordial relationship. Mr. Chapelle ran a moving business with U-Haul to help people load and unload moving trucks. Appellant completed some moving jobs for Mr. Chapelle's business and helped Mr. Chapelle find other workers. While Appellant worked for Mr. Chapelle, Mr. Chapelle found out that some of his other workers had noticed that Appellant habitually kept his doors to both his home and car open. Mr. Chapelle thought that these workers were planning on stealing from Appellant. Mr. Chapelle fired these workers and informed Appellant about what happened and that everything had been handled. Afterward[,] Appellant shook his hand and they both went to the corner store together. This occurred just over a month before the shooting.

Mr. Chapelle continued to hire Appellant's friends[,] and Mr. Chapelle had started to hear that Appellant did not like him. During this time, Appellant would have conversations with Mr. Chapelle's wife where he would say that he felt like Mr. Chapelle was trying to set Appellant up. Appellant had told Mr. Chapelle's wife during these conversations where Appellant felt threatened that, "bullets can go through floors." After Mr. Chapelle found out that Appellant had a problem with him he no longer spoke to Appellant. Prior to February 22, 2014, Appellant and Mr. Chapelle had not argued.

On February 22, 2014 at 9:00 PM, Mr. Chapelle had returned to his apartment building[,] which he shared with Appellant. Appellant's apartment was directly under Mr. Chapelle's. When Mr. Chapelle arrived to the building, Appellant was standing on the porch and then engaged in conversation with Mr. Chapelle. Mr. Chapelle then attempted to walk past him. Appellant … became physical with Mr. Chapelle. Appellant boxed Mr. Chapelle in so that he could not move. The two men beg[a]n arguing and Appellant said that, "If anything happens to him or his family he already told his people 'second floor[.'"]

Mr. Chapelle's wife then came downstairs to bring Mr. Chapelle inside their home. Mr. Chapelle and his wife turned the corner to enter Mr. Chapelle's apartment through the door on the side of the house. While Mr. Chapelle and his wife turned the corner, Appellant entered his apartment. Appellant's girlfriend Crystal then yelled, "No, don't do that." When Appellant came back out of his apartment, he had a silver gun.

Appellant approached Mr. Chapelle with the gun at his side while Mr. Chapelle was at his apartment door. When Appellant was ten feet away from Mr. Chapelle, Appellant raised the gun, pointed it at Mr. Chapelle's chest and shot him in the left arm. As Mr. Chapelle fell to the ground, Appellant advanced towards him and yelled, "If you tell anybody, if you call the cops, I'll kill you. I swear to God I'll kill your family." As Appellant stood over Mr. Chapelle, he heard another click from the gun but no shot was fired. Appellant left around the corner on the porch and Mr. Chapelle ran inside the home. The police arrived within minutes and took a statement from Mr. Chapelle. Afterward, Mr. Chapelle was transported to Temple Hospital.

The first responding officer, Officer Matthew Lally, entered Appellant's home upon arrival. During a search of the first floor of the apartment for other victims and Appellant, Officer Lally discovered a .380 [caliber bullet] in [] Appellant's toilet. Detective James Sloan's investigation revealed a trail of blood leading from Mr. Chapelle's apartment entrance along the porch. Detective Sloan also found a spent .380 cartridge on the corner of the porch. That [fired cartridge] was placed on property receipt number 3130139. After obtaining a search warrant and searching the home, Detective Sloan recovered nine .380 [caliber bullets], eight in the Appellant's bedroom and one in the toilet. The nine [bullets] were placed on property receipt number 3130140.

Tracey Brown is the next door neighbor to both Appellant and Mr. Chapelle and was present inside Appellant's apartment just before the altercation. Ms. Brown, claimed to have seen a knife in Mr. Chapelle's hand. Ms. Brown then went upstairs in her apartment which is adjacent to Appellant's apartment. While inside her apartment, Ms. Brown heard one gunshot. When asked about the knife, Ms. Brown could not identify where the knife came from, how Mr. Chapelle was holding it, or what he was doing with it. When questioned by police that evening Ms. Brown did not mention that she had seen a knife. The first time Ms. Brown mention[ed] the knife [was] to Appellant's lawyers. The record

does not indicate that a knife was recovered during police investigation.

Upon taking the stand, Appellant claim[ed] that Mr. Chapelle emerged from his apartment to talk to Appellant. Appellant claim[ed] that Mr. Chapelle initiated the conversation by accusing Appellant of making threats against Mr. Chapelle's daughter. During the altercation, Appellant claim[ed] that Mr. Chapelle pushed him against the door to Appellant's apartment. Appellant claim[ed] to have seen a knife. Appellant claim[ed] that after pulling the knife, Mr. Chapelle charged after Appellant through the front door to his home. According to Appellant, Mr. Chapelle struggled with Ms. Brown to get through the door while holding that knife in his hand. As Mr. Chapelle was trying to come through the door, Appellant grabbed his gun and fired a shot at Mr. Chapelle while Appellant was standing in his living room. After firing the shot, Appellant claim[ed] to have hid[den] the gun behind his mantle four feet above the floor and fled. Upon investigation, Detective Sloan did not recover a gun from the apartment or any spent shell casings in the home.

At the beginning of the trial, defense counsel raised an objection to the use of photographs marked C1 A through J on the grounds that he had not seen them before and they had not been passed in discovery. The discovery letter provided by the prosecutor indicated that the photos had been passed in discovery. Upon inquiry from this [c]ourt, defense counsel said that his objection was not strenuous. This [c]ourt offered defense counsel all the time he needed to prepare using the photographs. After a recess, defense counsel thanked this [c]ourt and proceedings continued. During the proceedings, defense counsel referenced material included in the discovery.

Trial Court Opinion (TCO), 8/9/17, at 2-6 (citations to the record omitted).

At the close of Appellant's non-jury trial, the trial court convicted him of aggravated assault and PIC. On April 7, 2016, the court sentenced Appellant to 10 to 20 years' incarceration for his aggravated assault conviction, and a concurrent term of 2½ to 5 years' incarceration for his PIC offense. Appellant filed a timely post-sentence motion, which was denied by operation of law on

August 15, 2016. He then filed a timely notice of appeal, and he also timely complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Therein, Appellant preserved the following claims for our review:

[I.] The evidence was insufficient as a matter of law to convict [Appellant] of Aggravated Assault. The evidence presented at trial was insufficient to show that [Appellant] attempted to cause serious bodily injury to another, or caused such injury intentionally, knowingly or recklessly under the circumstances manifesting an extreme indifference to the value of human life.

[II.] The evidence presented at trial was insufficient to convict [Appellant] of aggravated assault because [Appellant] acted in self-defense and the Commonwealth did not disprove justification beyond a reasonable doubt.

[III.] The evidence was insufficient as a matter of law to convict [Appellant] of [PIC]. The evidence presented at trial was insufficient to show that [Appellant] possessed an instrument of crime with the intent to employ it criminally.

[IV.] The verdict of guilty with respect to the charge of aggravated assault is against the weight of the evidence to such a degree as to shock one's conscience and sense of justice.

[V.] The verdict of guilty with respect to the charge of [PIC] is against the weight of the evidence to such a degree as to shock one's conscience and sense of justice.

[VI.] The [t]rial [c]ourt erred in permitting the introduction of photographs marked as Commonwealth Exhibit C1 A through J, mid-trial, which had not been provided to [the] defense in violation of Pa.R.Crim.P[.] 573.

Appellant's Pa.R.A.P. 1925(b) Statement, 10/5/16, at 1-2 (unnumbered). On August 9, 2017, the trial court issued an opinion addressing these claims.

On November 27, 2017, Attorney Belli filed with this Court a petition to withdraw from representing Appellant. That same day, counsel also filed an

*Anders* brief, discussing the above-stated issues and concluding that they are frivolous, and that Appellant has no other, non-frivolous issues he could pursue herein.  Accordingly,

> this Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant]. *Commonwealth v. Goodwin*, 928 A.2d 287, 290 (Pa. Super. 2007) (*en banc*).
>
> Prior to withdrawing as counsel on a direct appeal under *Anders*, counsel must file a brief that meets the requirements established by our Supreme Court in *Santiago*. The brief must:
>
>> (1) provide a summary of the procedural history and facts, with citations to the record;
>>
>> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>>
>> (3) set forth counsel's conclusion that the appeal is frivolous; and
>>
>> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.
>
> *Santiago*, 978 A.2d at 361. Counsel also must provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the *Anders* brief." *Commonwealth v. Nischan*, 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

*Commonwealth v. Orellana*, 86 A.3d 877, 879-80 (Pa. Super. 2014).  After determining that counsel has satisfied these technical requirements of *Anders* and *Santiago*, this Court must then "conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked

- 6 -

by counsel." ***Commonwealth v. Flowers***, 113 A.3d 1246, 1250 (Pa. Super. 2015) (citations and footnote omitted).

In this case, Attorney Belli's ***Anders*** brief complies with the above-stated requirements. Namely, he includes a summary of the relevant factual and procedural history, he refers to portions of the record that could arguably support Appellant's claim, and he sets forth his conclusion that Appellant's appeal is frivolous. He also explains his reasons for reaching that determination, and supports his rationale with citations to the record and pertinent legal authority. Attorney Belli states in his petition to withdraw that he has supplied Appellant with a copy of his ***Anders*** brief. Additionally, he attached to his petition to withdraw a letter directed to Appellant, in which he informs Appellant of the rights enumerated in ***Nischan***. Accordingly, counsel has complied with the technical requirements for withdrawal.

In satisfying our obligation to independently review the record to determine if Appellant's issues are frivolous, and to ascertain if there are any other, non-frivolous issues he could pursue on appeal, we have examined the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed the well-crafted opinion of the Honorable Diana L. Anhalt of the Court of Common Pleas of Philadelphia County. We conclude that Judge Anhalt's thorough, well-reasoned opinion accurately explains why the issues presented by Appellant are frivolous. Moreover, our review of the record has revealed no other, non-frivolous issues that Appellant could assert herein. Accordingly, we affirm Appellant's judgment of sentence on the grounds set

forth by Judge Anhalt in her opinion, and grant Attorney Belli's petition to withdraw.

Judgment of sentence affirmed. Petition to withdraw granted. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/29/18